ALFRED R. PEDRO *et ux. vs.* JOSEPH R. MURATORE *et al.,*
*as Zoning Board of Review of the City of Warwick.*

MAY 6, 1955.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J. This petition for certiorari was brought by certain remonstrants to review the decision of the respondents, sitting as the zoning board of review of the city of Warwick, denying an appeal from the building inspector's granting of a certain permit to the owners of a lot adjacent to that of petitioners. Pursuant to the writ the records of the hearing and the decision of the respondent board have been certified to this court.

It appears therefrom that Edwin Sharp and Florence M. Sharp, herein called the applicants, are the owners of a parcel of land designated as lot No. 167 on assessor's plat No. 320 in the city of Warwick. The lot is situated on the southwesterly corner of two intersecting public highways, Warwick avenue and Cavalcade Boulevard, and is located in a business D district under the zoning ordinance of that city. It bounds easterly on Warwick avenue, northerly on Cavalcade Boulevard, and southerly on land of other owners who are not parties to this proceeding. Along its westerly boundary the lot is immediately adjacent to land owned by petitioners, sometimes called the remonstrants, whose lot is located in a residential B district under the zoning ordinance.

The Sharps had applied for and received from the building inspector a permit to construct upon their corner lot a building for use as a store. Such use was permitted in a business D district under the zoning ordinance, which also authorizes the building inspector to designate the part of the building which shall be considered its front. Accordingly he determined that the part of the proposed building facing Warwick avenue was the front, because it provided three doors on that side to be used as entrances. The part nearest to and facing remonstrants' land was therefore designated as the rear.

After building operations had been commenced the remonstrants objected on the ground that the part of the building nearest their premises was only 10 feet from the common boundary, whereas the pertinent provisions of the ordinance required a rear yard of at least 20 feet. Thereupon the building inspector ordered the work stopped, and pursuant to his direction the applicants moved the building to a place on their lot which would give a rear yard of 20 feet between the nearest part of the building and remonstrants' premises along the common boundary.

The remonstrants, however, were not satisfied and prosecuted to the respondent zoning board of review their appeal from the granting of the permit. After a hearing thereon before that board, a decision was rendered denying the appeal and affirming the permit as complying with the requirements of the zoning ordinance. Thereupon petitioners filed the instant petition for certiorari to review the board's decision.

The petitioners claim that the board misconceived the law, especially with regard to the requirements of the zoning ordinance in relation to "front yards." They contend that under the ordinance a corner lot in a business D district, which abuts immediately on premises in a residential B district, must be used in accordance with *all* the yard restrictions applicable to the adjoining residential area; that under section VI (E) such restrictions require an unoccupied space of 25 feet for the depth of the lot between the building and *front street* line and also a similar space between the building and the *side street line;* and that therefore the board erred in failing to require applicants to provide a 25-foot yard or setback between the north side of the building and Cavalcade Boulevard.

This conclusion is reached by a series of ingenious but specious arguments which in our judgment need not be answered in detail. On the facts of record here it is clear that the requirements for both a front and rear yard, and also for a side yard on the south, have been complied with

and are not disputed. The only question is whether the ordinance, as applied to applicants' lot, further requires an unoccupied space of 25 feet for the whole depth of the lot between the north side of the building and the side street line, namely, Calvalcade Boulevard.

It is true, as petitioners contend, that applicants' lot is immediately adjacent on the west to a residential B district, and that section VI (E) under such residential district requires: "In a Residence B District every building hereafter erected shall have a front yard not less than 25 feet in depth between a front street line and the building, and not less than 25 feet in depth between a side street line and the building." But petitioners apparently overlook the fact that while such regulations govern a lot in a residential B district, applicants' lot was located under the zoning ordinance in a *business D district.* Consequently the use of the lot in question is not to be governed by the regulations for the residential district but rather by section VIII (C) which reads as follows: "In a Business D District any premises immediately abutting a residential District shall provide on the sides immediately contiguous to the residential District front, back, *or* side yard restrictions similar to those provided for in the adjoining residential District." (italics ours)

It will be noted that the direction in that section is *not* to provide an unoccupied space or yard on *all* sides of such a building. It merely directs that "on the sides immediately contiguous to the residential District" a front, back or side yard is required. In other words the question whether a front or a back or a side yard restriction is to apply under that language is determinable by what part of the lot is *immediatey contiguous* to the premises in a residential district.

Here the lot is on a corner of two intersecting streets in a business D district. It therefore has a front and a side street line or boundary. The front yard has been properly determined by the building inspector. The rear yard is

adjacent to petitioners' lot and also complies with the pertinent regulations. Of the two remaining *sides* of the lot, one is bounded on Cavalcade Boulevard on the north and the other is immediately adjacent on the south to premises apparently in a business D district. At any rate it is not disputed that a proper yard between the building and the south side of the lot immediately contiguous has been provided.

Therefore there is no requirement in such section of the ordinance that a lot located in a business D district must have in effect two front yards, one on each street, or that Cavalcade Boulevard in that area must be considered a residential district so as to require a side yard setback immediately adjacent thereto in accordance with the terms of the above-quoted and pertinent provision.

The petitioners further contend that the language of said section VIII (C) should be construed as if the disjunctive "or," which has been italicized by us in the foregoing quotation, should be read as if it were the conjunctive "and"; that such words are often used interchangeably in law; that in the present instance they should be interchanged; and that if so read the ordinance would respond to the intent of the framers of it and would require the equivalent of a front yard or setback between the building and Cavalcade Boulevard for the whole depth of the lot.

We do not agree with this contention. To reach such conclusion petitioners cite the language of section VIII (C), *supra,* and of section XIX, paragraph 10, of the ordinance which 'concerns definitions and reads as follows: "A front yard is an open unoccupied space on the same lot with the building situated between the building and the front street line *or* the side street line of the lot and extending across the full width of the lot." (italics ours) In order to justify the change from the disjunctive "or" to the conjunctive "and" in the above-quoted section, the petitioners examine the provisions in connection with a supposed case where a

lot might be adjacent to a residential district on three sides and to a street on the other. It is true that the words "or" and "and" sometimes are used interchangeably, but only where it is reasonably necessary to give effect to the intent of the text.

Further, whatever may be said grammatically as to the adequacy and accuracy of the language of the governing provisions if applied to petitioners' supposed case, the plain answer is that such a case is not before us. The applicants' lot is immediately contiguous to premises in a residential district only on one side. It is not disputed that on that side and on the south side yard spaces according to the zoning ordinance have properly been provided in the permit. The northerly side of the lot is not adjacent to a residential area. On the contrary it bounds immediately on Cavalcade Boulevard, a public highway, and the north side of that street opposite the lot abuts another business D district.

In the circumstances, therefore, the governing ordinance, namely, section VIII (C), can be reasonably applied to this particular lot in accordance with the language as written and as interpreted by the zoning board. In our opinion there is no merit in petitioners' argument that the northerly side of the applicants' lot is to be considered immediately contiguous to petitioners' lot because the street lines bounding each lot on that side meet at a point on Cavalcade Boulevard. For the purposes of this section of the ordinance the framers clearly intended that there must be a substantial contiguity of the *premises* and not merely a coincidence or an apposition of two points in a continuous line.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the papers in the case are ordered returned to the respondent board with our decision endorsed thereon.

*Carroll & Dwyer, Edward F. J. Dwyer,* for petitioners.

*Hailes L. Palmer, City Solicitor,* for respondents.